[Crim. No. 12270.   Second Dist., Div. One.   July 12, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ARNEAUX
ALEXANDER VICTOR, Defendant and Appellant.

Morton Herbert, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David Gould, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from the ''sentence imposed Dec. 29, 1965 in Dept. 110 of Superior Court . . .''

In an information filed in Los Angeles County on March 27, 1962, defendant in count I was charged with assaulting Florence Fisher with a deadly weapon with intent to commit murder on or about March 1, 1962, and in count II with assaulting Valerie B. Gilmore with a deadly weapon with intent to commit murder on or about March 1, 1962. Defendant, with counsel, was arraigned and pleaded not guilty on March 27, 1962. On April 24, 1962, the date set for trial, defendant, with counsel, withdrew his plea of not guilty and pleaded guilty to two counts of violation of section 245, Penal Code (assault with a deadly weapon, a lesser and necessarily included offense). Defendant made application for probation. The probation officer's report indicates that the attack by defendant upon the two women was unprovoked, that Mrs. Fisher (one of the victims) was, at the time of the hearing, paralyzed on one side and confined at Rancho Los Amigos Hospital; further, that Miss Gilmore, a victim, was hospitalized for a short period of time. It was recommended by the probation officer that probation be denied.

On May 16, 1962, proceedings were suspended, probation was granted for five years, a part of the terms being that defendant spend the first 10 months in the county jail (road camp or honor farm recommended), make restitution in amounts as prescribed by the probation officer, not drink liquor and obey all laws.

Probation was modified October 10, 1962, to provide in effect that the time to be spent in the county jail be reduced to the time served, all other terms to remain the same.

On November 18, 1963, the matter was again before the court on a modification proceeding. The probation officer's report of that date sets forth that the defendant had failed to comply with the conditions of probation; that the amount for restitution had been set at $3,452.32 in January 1963, and defendant had been notified thereof in March 1963, and of his obligations toward restitution on the hospitalization bills of

his victims; that since being notified he had paid only two $10 payments (this in spite of the fact that defendant was regularly employed and admittedly earned at least $300 per month). Defendant was ordered to pay $20 per month on the restitution, all other terms of the probation to remain the same.

On November 15, 1965, a violation modification proceeding was filed by the probation officer. It was set forth that on July 23, 1964, defendant had been involved in a criminal battery affair which apparently was compromised and reduced to a disturbing the peace charge. Further, that on May 18, 1965, defendant had been found guilty of a lewd conduct charge. Further, that defendant had paid only $40 on the restitution amount during 1965 and many times had neglected to report to the probation officer. It was recommended, in the light of defendant's repeated violations of probation, that he be found in violation, that probation be modified and that he spend 30 days in jail. Defendant was directed to appear in court on December 1, 1965. As might be expected, defendant did not appear on December 1, 1965, and a bench warrant was issued for his arrest.

On December 1, 1965, a supplemental report was filed by the probation officer wherein it is set forth that defendant had threatened his aged mother during the latter part of November 1965; that he had used obscene language toward her and, in effect, had run her out of her home. That he had threatened to kill her and had pointed a rifle at her and pulled the trigger, but fortunately the weapon misfired. It is further set forth that defendant apparently was having difficulty mentally, supposedly because of the fact that one of his victims in the 1962 episode was still paralyzed; that defendant was drinking heavily, had temper tantrums and had threatened to kill persons and that his family and friends were afraid of him. It was recommended that defendant be certified to department 95 for psychiatric evaluation.

On December 10, 1965, defendant was brought in and a hearing was had on December 15, 1965. On the date last mentioned, probation was revoked and defendant was referred to department 95.[1]

---

[1] "THE COURT: Arneaux Alexander Victor.
"Sir, you were picked up on a bench warrant for violation of probation.
"The Court finds you in violation of your probation.
"Excuse me, are you represented by a lawyer?
"THE DEFENDANT: No, sir.
"THE COURT: Do you have the money to hire a lawyer?

The medical examiners found defendant to be "sociopathic personality disorder—anti-social" and recommended "dismiss." In effect the medical examiners determined that defendant did not need hospital care and that he was not mentally ill.

On December 29, 1965, the matter came on again in Judge Wapner's court. The reporter's transcript recites in part as follows:

THE COURT: Arneaux Alexander Victor.

"Mr. Victor, I sent you over to Department 95 as a possible mentally ill person. They sent the petition back saying that you are not mentally ill.

"So you are here today on a violation of probation.

"Probation will remain revoked. You will be sentenced to the state prison for the term prescribed by law.

"Let the record indicate that I have read all of the past probation reports, supplemental probation reports, and reports of the various doctors contained in the file."

The two counts were ordered to run concurrently with each other.

Appellant now asserts that he was not adequately informed of his right to counsel, and that he was not afforded the opportunity to retain counsel or to have counsel appointed to

---

"THE DEFENDANT: Yes, sir.
"THE COURT: You do?
"THE DEFENDANT: Yes.
"THE COURT: Do you want to have a lawyer here?
"THE DEFENDANT: I have one, sir.
"THE COURT: Who is it?
"THE DEFENDANT: He is not here.
"THE COURT: What is his name?
"THE DEFENDANT: Howard Beckler.
"THE COURT: Did he say he would be here?
"THE DEFENDANT: No, I haven't contacted him this morning. My probation officer told me he didn't think I'd need a lawyer. He was supposed to be here in court this morning. I don't see him.
"THE COURT: Well, what I intended to do was send you over to Department 95, the psychiatric ward, under 5047 of the Welfare and Institutions Code, and determine your mental condition, to see whether or not you ought to be in a mental hospital.
"If you want a lawyer here to represent you before I do that, it is your privilege and prerogative to have a lawyer.
"If you want to call Mr. Beckler, and if you want me to continue this one week, I will continue the case one week.
"THE DEFENDANT: Well, I guess I'll just go to the hospital.
"THE COURT: You understand your right to have an attorney here?
"THE DEFENDANT: Yes.
"THE COURT: Pardon me?
"THE DEFENDANT: Yes, I do.
"THE COURT: Probation is revoked. You are referred to Department 95 under Section 5047 of the Welfare and Institutions Code."

represent him. The Attorney General argues that appellant was duly advised of his right to counsel and that he intelligently waived the right to have counsel present and to represent him at the time. Neither counsel has advised this court as to whether the proceeding referred to is the one wherein probation was revoked in the first instance or the one wherein appellant was sentenced.

The revocation of probation was proper under the circumstances. This court ordered, pursuant to the rules, the original record to this court and we have read what the judge had before him at the time of making the order for revocation of probation. We cannot understand how he could have done other than what he did.

Appellant had no right to a hearing preceding the revocation of probation. The court could revoke the probation solely upon the basis of the probation officer's reports. The constitutional right to have counsel is not applicable, for a probation proceeding is not a part of a prosecution, as that term is used in the Constitution. (See *People* v. *Mason*, 184 Cal.App.2d 182 [7 Cal.Rptr. 525]; *People* v. *De Waele*, 224 Cal.App.2d 512 [36 Cal.Rptr. 825]; *People* v. *Siegel*, 235 Cal.App.2d 522 [45 Cal.Rptr. 530]; *In re Levi*, 39 Cal.2d 41 [244 P.2d 403]; *In re Davis*, 37 Cal.2d 872 [236 P.2d 579].)

There can be no doubt, however, that appellant was entitled to counsel in the proceedings for the pronouncement of judgment after the revocation of probation. (See *In re Turrieta*, 54 Cal.2d 816, 819 [8 Cal.Rptr. 737, 356 P.2d 681]; *In re Boyce*, 51 Cal.2d 699 [336 P.2d 164]. )The right to counsel, under such circumstances, is subject to waiver. Here, however, the so-called waiver is far from satisfactory, and we think clearly insufficient. (*In re Perez*, 65 Cal.2d 224, 229 [53 Cal.Rptr. 414, 418 P.2d 6].)

Appellant reveals no invalidity in the adjudication of his guilt and is not entitled to be released from custody. The pronouncement of sentence and judgment is ordered vacated and set aside, and appellant shall be rearraigned for pronouncement of judgment and sentenced in accordance with the law.

Wood, P. J., and Lillie, J., concurred.